UNIVERSITY OVERLAND EXPRESS, INC. vs. J. W. ALSOP ET ALS., PUBLIC UTILITIES COMMISSION.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

276

Argued November 5th—decided December 1st, 1936.

*Martin E. Gormley,* and *Horace P. Moulton,* of Massachusetts, for the plaintiff.

*Charles J. McLaughlin,* Deputy Attorney General, with whom, on the brief, were *Edward J. Daly,* Attorney General, and *Frederic W. Dauch,* for the defendant.

HINMAN, J. The plaintiff is a Massachusetts corporation which is, and has been since prior to June 1st, 1935, engaged in the transportation of automobiles by motor vehicle for hire. In the course of its business it operates its motor vehicles over the highways of Connecticut, which operation it is agreed is wholly interstate in character. On August 17th, 1935, the plaintiff made application to the public utilities commission of Connecticut to engage in the transportation of property by motor vehicle for hire over the highways of this State as an interstate carrier, as required by General Statutes, Cum. Sup. 1935, §§ 592c and 593c. On December 12th, 1935, the defendants promulgated an order establishing minimum requirements as to insurance which must be carried by holders of permits to transport property for hire by motor vehicle except in special cases where adequate financial responsibility is shown, this order being known and referred to as Docket 6253. It provided that each holder of such a permit "shall carry insurance in a company licensed to do an insurance business in the State of Connecticut which insurance shall indemnify the insured against any legal liability for personal injury, the death of any person, or property damage, which injury, death or damage may result from or have been caused by the use or operation of any motor vehicle operated by the assured, its agents or employees, for the transportation of property for hire." The amount of insurance which each permit holder is required to carry against liability for personal injury or death of one person in one accident shall be not less than $10,000; for personal injury or death of more than one person in one accident, not less than $20,000; and against claims for damage to property, not less than $5000. "The Commission upon suitable application in special cases where adequate financial responsibility is

shown may permit a carrier to be a self-insurer under such conditions as the Commission may in each case prescribe."

On December 13th, 1935, the defendants held a public hearing upon the plaintiff's application, at which the plaintiff offered evidence of insurance by a Massachusetts corporation duly licensed to do business in Massachusetts but not licensed by the insurance commissioner of Connecticut to do an insurance business in this State, although it had appointed an agent in Connecticut solely for the purpose of the service of process within the State. On January 20th, 1936, the defendants denied this application unless and until the plaintiff gives evidence of insurance of the nature prescribed in Docket 6253 in an insurance company licensed by the insurance commissioner of Connecticut to do business within the State, and the plaintiff thereupon brought this appeal.

On August 8th, 1935, Congress enacted the "Motor Carrier Act, 1935." It was approved by the President on August 9th, became effective as to all sections here material on October 1st, 1935, and the whole act is now effective. 49 U. S. C. A., §§ 301-327. Section 302, entitled "Declaration of policy and delegation of jurisdiction," provides: "(a) It is hereby declared to be the policy of Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coördinate transportation by and regulation of, motor carriers and other carriers; de-

velop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and co-operate with the several States and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter. (b) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission. (c) Nothing in this chapter shall be construed . . . to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof."

The term "common carrier by motor vehicle" is defined in § 303 (a) (14) to mean "any person who or which undertakes . . . to transport passengers or property . . . for the general public in interstate or foreign commerce by motor vehicle for compensation . . ." and "contract carrier by motor vehicle" (15) to mean "any person, not included under paragraph (14) of this section, who or which, under special and individual contracts or agreements . . . transports passengers or property in interstate or foreign commerce by motor vehicle for compensation." Section 306 (a) provides that no common carrier by motor vehicle shall engage in interstate or foreign commerce "on any public highway . . . unless there is in force with respect to such a carrier a certificate of public convenience and necessity issued by the Commission;" it being also provided that those carriers in business June 1st, 1935, shall be granted certificates for the

operation then being conducted, and § 309(a) requires contract carriers by motor vehicle to obtain permits issued by the commission before engaging in interstate commerce.

Section 315, entitled "Security for protection of public," provides: "No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others. The Commission may, in its discretion and under such rules and regulations as it shall prescribe, require any such common carrier to file a surety bond, policies of insurance, qualifications as a self-insurer, or other securities or agreements, in a sum to be determined by the Commission, to be conditioned upon such carrier making compensation to shippers and/or consignees for all property belonging to shippers and/or consignees, and coming into the possession of such carrier in connection with its transportation service . . ."

The plaintiff is subject to the provisions of this "Motor Carrier Act" and subsequent to the hearing before the defendants made application to the interstate commerce commission for a certificate of public convenience and necessity to operate as a common

carrier or a permit to operate as a contract carrier, has complied with all the requirements of the act, and its continued operation in Connecticut in interstate commerce is lawful under the provisions of that act.

The stipulation of facts for the purposes of the reservation (filed May 29th, 1936) stated, in addition to the foregoing, that the interstate commerce commission had not then promulgated rules and regulations with respect to insurance under the authority of § 315 of the Motor Carrier Act; but upon the hearing in this court an amendment was filed stipulating that the commission "has promulgated rules and regulations under § 215 [U. S. C. A. § 315] . . . covering the subject of insurance requirements of interstate motor carriers which are in all respects material to this case substantially the same as those contained in Docket 6253."

Four questions are propounded by the reservation. An affirmative answer to any one of the first three (a, b, and c) or a negative answer to the fourth (d) would be decisive against the ground upon which the defendants denied the application—failure to give evidence of insurance in a company licensed by the insurance commissioner to do business in this State, as prescribed by Docket No. 6253. Question (b) reads as follows: "Does the enactment by Congress of the Motor Carrier Act, 1935, supersede and render inoperative the power and authority of the State of Connecticut and of the defendants to require insurance of the nature prescribed by the defendants in said Docket No. 6253 as a condition precedent to the granting of the plaintiff's application for a permit to engage in the transportation of property by motor vehicle for hire over the highways of the State of Connecticut as an interstate carrier wholly in interstate commerce?"

As we find the answer to this question, when adapted

to give effect to the amendment of the record above referred to, decisive, we confine discussion thereto. For the purposes of consideration of that question we assume, without deciding, that the state statute (General Statutes, Cum. Sup. 1935, §§ 575c to 605c) may be construed as conferring upon the public utilities commission "power and authority to make requirements of insurance of financial responsibility as conditions precedent to the granting of a permit to engage in the transportation of property by motor vehicle for hire on the highways of the State of Connecticut as an interstate carrier wholly in interstate commerce" (Question d).

"A state law . . . dealing only with state matters, is valid, notwithstanding it may incidentally affect interstate commerce, unless it comes in conflict with some valid statute of the United States on that subject." *State* v. *Harbourne*, 70 Conn. 484, 489, 40 Atl. 179. The plaintiff concedes that, unless and until precluded by congressional action, the powers of the State over the control of the use of its highways extend to general regulations for their preservation and for the protection of the safety of travel thereon. *Commonwealth* v. *New England Transp. Co.*, 282 Mass. 429, 436, 185 N. E. 23, 26. These regulations may include a requirement that interstate as well as intrastate carriers shall furnish security, by way of insurance policies or provision of financial responsibility, for the payment of compensation for injuries to third persons and their property from negligent operation of such carriers. *Hicklin* v. *Coney*, 290 U. S. 169, 171, 54 Sup. Ct. 142. "There being grave dangers incident to the operation of motor vehicles, a State may require users of such vehicles on the public highways to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries, resulting from

their operation. . . . Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the State by persons other than the passenger." *Sprout* v. *South Bend,* 277 U. S. 163, 171, 172, 48 Sup. Ct. 502; *Kane* v. *New Jersey,* 242 U. S. 160, 167, 37 Sup. Ct. 30; *Hess* v. *Pawloski,* 274 U. S. 352, 356, 47 Sup. Ct. 632. A requirement that the insurance be by a policy issued by a company authorized to do business in the State is a reasonable one. *Sprout* v. *South Bend,* supra, p. 167.

However, the right of the State to prescribe such regulations, promoting public safety upon its highways, with respect to motor vehicles operated thereon in interstate commerce is conditioned upon "absence of national legislation covering the subject." *Hendrick* v. *Maryland,* 235 U. S. 610, 622, 35 Sup. Ct. 140; *Sprout* v. *South Bend,* supra, p. 169; *Morris* v. *Duby,* 274 U. S. 135, 143, 47 Sup. Ct. 548. "The States act within their respective jurisdictions until Congress sees fit to act." *Sproles* v. *Binford,* 286 U. S. 374, 390, 52 Sup. Ct. 581; *Minnesota Rate Cases,* 230 U. S. 352, 399, 33 Sup. Ct. 729, 48 L. R. A. (N. S.) 1151. "State regulation of that character is valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject." *Buck* v. *Kuykendall,* 267 U. S. 307, 315, 45 Sup. Ct. 324, 38 A. L. R. 286, 290. "The mere creation of the interstate commerce commission, and the grant to it of a measure of control over interstate commerce, does not of itself, and in the absence of specific action by the commission or by Congress itself, interfere with the authority of the States to establish [such] regulations . . . even though interstate commerce be thereby incidentally affected, so long as it be not di-

rectly burdened or interfered with" but "when Congress has exerted its paramount legislative authority over a particular subject of interstate commerce, state laws upon the same subject are superseded." *Missouri, K. & T. Ry. Co.* v. *Harris*, 234 U. S. 412, 417, 34 Sup. Ct. 790.

The effect of these rules is well illustrated by three cases which are reviewed in the *Harris* case, pp. 417, 418. In *Missouri Pacific Ry. Co.* v. *Larabee Flour Mills Co.*, 211 U. S. 612, 623, 29 Sup. Ct. 214, it was held that as specific action had not been taken by Congress or the interstate commerce commission affecting a Kansas law under which mandamus was granted requiring the railroad company to restore certain service to the Larabee mills and elevator, the state law remained effective, while in *Southern Ry. Co.* v. *Reid*, 222 U. S. 424, 437, 438, 32 Sup. Ct. 140, and *Chicago, R. I. & P. Ry Co.* v. *Hardwick Farmers Elevator Co.*, 226 U. S. 426, 433, 33 Sup. Ct. 174, it was ruled that since, by the Hepburn Act, Congress had enacted legislation upon the specific subjects of acceptance of freight and delivery of cars, prior state laws pertaining thereto were superseded. The result is that when Congress in acting upon a certain subject of interstate commerce has not covered the whole subject, a state law, passed in proper exercise of its police powers, may regulate in respects not covered by the federal law. If a state statute deals with a subject "respecting which Congress has not spoken, until Congress does speak, the State may enforce it." *Missouri, K. & T. Ry. Co.* v. *Harris*, supra, p. 422. But a state regulation in respect to a branch of interstate commerce covering the same ground as a rule lawfully prescribed by or under authority of Congress "will cease to have any force, whether formally abrogated or not," and the regulations prescribed by or under authority of Con-

gress "will alone control." *Reid* v. *Colorado*, 187 U. S. 137, 146, 23 Sup. Ct. 92.

To come in conflict with a law enacted by Congress or a regulation promulgated pursuant to it, the provisions of a state law or regulation, to be superseded by it, need not, necessarily, be in opposition or repugnant thereto. "When Congress sees proper to act with respect to any particular branch of interstate or foreign commerce, state regulations in conflict therewith or acting upon the same subject are thereby superseded." 5 R. C. L. p. 704. "When Congress has taken the particular subject-matter in hand, coincidence is as ineffective as opposition." *Charleston & Western Carolina Ry. Co.* v. *Varnville Furniture Co.*, 237 U. S. 597, 604, 35 Sup. Ct. 715. "The elementary and long settled doctrine is that there can be no divided authority over interstate commerce and that regulations of Congress on that subject are supreme" (*Chicago, R. I. & P. Ry. Co.* v. *Hardwick Farmers Elevator Co.*, 226 U. S. 426, 435, 33 Sup. Ct. 174) "and exclusive." *Missouri Pacific R. Co.* v. *Stroud*, 267 U. S. 404, 408, 45 Sup. Ct. 243; *Oregon-Washington R. & N. Co.* v. *Washington*, 270 U. S. 87, 101, 46 Sup. Ct. 279.

To have the effect of superseding a state statute or regulation the federal law may either expressly cover the precise subject-matter or show a purpose to take legislative possession of the whole field. 12 C. J. p. 18. To the extent that Congress does occupy the field of legislation, existing state legislation within the scope of such occupation is superseded and further legislation prevented. "The test . . . is not whether the state legislation is in conflict with the details of the federal law or supplements it, but whether the State had any jurisdiction of a subject over which Congress had exerted its exclusive control." *Southern Ry. Co.* v. *Indiana Railroad Commission*, 236 U. S. 439, 446,

448, 35 Sup. Ct. 304. "Congress having entered this field of regulation, it follows from the paramount character of its authority that state regulation of the subject-matter is excluded." *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33, 41, 36 Sup. Ct. 482. "In a case where . . . the State may exert authority until Congress acts, under the assumption that Congress, by inaction, has tacitly authorized it to do so, action by Congress destroys the possibility of such assumption, since such action, when exerted, covers the whole field, and renders the State impotent to deal with a subject over which it had no inherent, but only permissive, power." *Chicago, R. I. & P. Ry. Co.* v. *Hardwick Farmers Elevator Co.,* supra, p. 435; *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 505, 33 Sup. Ct. 148; *Northern Pacific Ry. Co.* v. *Washington,* 222 U. S. 370, 378, 32 Sup. Ct. 160; 12 C. J. p. 15.

The amendment to the stipulation of facts stating that, under § 215 of the Federal Motor Carrier Act, the interstate commerce commission has promulgated rules and regulations covering the subject of insurance requirements of interstate motor carriers which are, in all respects material to this case, substantially the same as the regulation (Docket 6253) adopted by the state public utilities commission, obviates consideration of the narrower question whether the fact that Congress had vested the interstate commerce commission with authority to make such rules would be sufficient to nullify the state regulation, although no rule on the subject had been promulgated under the federal law. We need, now, only consider the application of the principles above set forth to the clear-cut situation presented by the stipulated facts as they now stand. It appears therefrom that Congress has not only declared a design and purpose to occupy a field of control over the regulation of interstate commerce

by motor carriers broad enough to include regulation of financial responsibility, by insurance or otherwise, for injuries inflicted by such carriers in interstate traffic, but that, pursuant to express authority conferred by the act (U. S. C. A. § 315), the interstate commerce commission has prescribed rules and regulations covering the subject. The fact that there is substantial coincidence, in the respects here under consideration, between them and the regulation promulgated by the state public utilities commission by Docket No. 6253 does not avail to create a "divided authority" through a continued effectiveness of the state regulation, either independent of or concurrent with the assumption and exercise of federal authority. *Charleston & Western Carolina Ry. Co.* v. *Varnville Furniture Co.*, supra. The federal law and regulations prescribed under it become "supreme and exclusive." *Chicago, R. I. & P. Ry. Co.* v. *Hardwick Farmers Elevator Co.*, supra; *Missouri Pacific R. Co.* v. *Stroud,* supra. The necessary consequence is that, whatever may have been the situation before the taking effect of the act of Congress, or even, thereafter, before the adoption of rules and regulations specifically covering the subject-matter of insurance requirements of interstate motor carriers, which are stipulated to be in all respects material to this case (including, by necessary inference, provisions that insurance be in a company licensed to do business in this State and prescribing the amount of insurance required to be carried) substantially the same as those contained in Docket No. 6253, the state regulation in those respects has been superseded and rendered inoperative; as to whether or not state regulation in respects not involved in the issues presented on this record also has been superseded or precluded thereby, we express no opinion. The amendment of the stipulation renders

academic a decision as to whether, after the taking effect of the act of Congress but prior to the promulgation of the regulation thereunder, supersedure of the state regulation had so become effective as to render it unavailable as a ground of denial of the application.

The determinative question, upon the present record, is: Does the enactment by Congress of the Motor Carrier Act, 1935, and the promulgation of rules and regulations, under § 215 thereof, concerning insurance requirements of interstate motor carriers in all respects material to this case substantially the same as those contained in Docket No. 6253, supersede and render inoperative the power and authority of the State and the defendants to require insurance of the nature prescribed in Docket No. 6253 as a condition precedent to the granting of the plaintiff's application? To this our answer is "Yes."

No costs will be taxed in this court.

In this opinion the other judges concurred.