JOHN J. McCARTHY COMPANY vs. J. W. ALSOP ET ALS., PUBLIC UTILITIES COMMISSION

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued November 5th—decided December 1st, 1936.

*Martin E. Gormley,* and *Horace P. Moulton,* of Massachusetts, for the plaintiff.

. *Charles J. McLaughlin,* Deputy Attorney General, with whom, on the brief, was *Edward J. Daly,* Attorney General, for the defendants.

HINMAN, J. This case involves as, in different aspects, does *University Overland Express, Inc.* v. *Alsop,* 122 Conn. 275, 189 Atl. 458, Chapter 126 of the Public Acts of 1935 (Part IVa of Chapter 82 of the General Statutes, Cum. Sup. §§ 575c to 605c, inclusive, entitled "Regulation of Trucks") and proceedings thereunder. The stipulated facts include the following: The plaintiff is a Massachusetts corporation conducting, since

prior to December 31st, 1934, the operation of a transportation service over regular routes between points within the State of Connecticut as a motor carrier as that term is defined in that act. On August 7th, 1935, it made application to the defendants for a permit authorizing it to transport property as a motor common carrier, and its operation prior to December 31st, 1934, was such as to entitle it to a permit as a matter of right under § 581c, which is printed in a footnote, provided it complies with the provisions of that section, including that relating to financial responsibility. On August 29th, 1935, and on December 13th, 1935, the defendants held public hearings upon the application. On December 12th, 1935, the defendants promulgated an order, known and referred to as Docket 6253, establishing minimum requirements as to insurance which must be carried by holders of permits except in cases where adequate financial responsibility of the applicant is shown. The provisions thereof are summarized in *University Overland Express, Inc.* v. *Alsop,* supra, one of them being that the insurance shall be "in a company licensed to do an insurance business in the State of Connecticut."

At the hearing of December 13th the plaintiff offered

Sec. 581c. ESTABLISHED SERVICE. A permit shall be granted as a matter of right for the operation of the transportation service conducted by or on behalf of the applicant if, upon investigation, the commission shall determine such service was actually being rendered by the applicant before December 31, 1934, or, if seasonal, the season last preceding said date, over the route or routes covered by the application, and, in such case, such service may lawfully be continued pending the issue of such permit, provided the applicant shall be financially responsible and such application shall be made within thirty days from the effective date of this part. No such application shall be denied except after hearing thereon by the commission. The commission shall have the power to decide the question of financial responsibility on the individual merits of the applicant and to require that such financial responsibility be adequate. Effective August 6, 1935.

evidence of insurance by a Massachusetts mutual lia-
bility insurance company, licensed to do business in
Massachusetts but not in Connecticut, although it had
appointed an agent in Connecticut solely for the pur-
pose of service of process in this State. In all other
respects the insurance complied with the requirements
of Docket 6253. On January 20th, 1936, the defend-
ants denied the plaintiff's application for a permit un-
less and until it gives evidence of insurance in a com-
pany licensed to do business in this State, and the
plaintiff brought this appeal.

The first question presented by the reservation is:
"a. Is the order and decision of the defendants denying
the plaintiff's application unlawful and in excess of
the authority vested in the defendants by Sections
575 (c) to 605 (c), inclusive, Cumulative Supplement
to the General Statutes 1935." The contention of the
plaintiff in support of an affirmative answer thereto is
that the statute "does not vest the defendants with
power or authority to make requirements of insurance
such as those contained in . . . Docket 6253." It
appears from the memorandum of decision of the pub-
lic utilities commission denying the application that
the commission regarded "the order . . . contained in
Docket 6253 [as] made pursuant to the specific pro-
visions of Section 598c and inferentially of Section
581c." Section 581c has already been quoted. Section
598c reads as follows: "Any person subject to the pro-
visions of this part shall be subject to such orders,
rules and regulations as shall be adopted and promul-
gated by the commission under authority of this part
and to the general supervision and jurisdiction of the
commission." Another section, 605c, is: "The com-
mission is authorized to make such regulations, to hold
hearings and to issue such permits as may be required

under the provisions of this part. Any such permit shall not become effective until August 6, 1935."

It is claimed here also on behalf of the defendants that these sections authorize them to "make such regulations as may be required under the provisions of . . . Section 581c," and the main contention of the plaintiff is that no such authority is to be derived from these sections or is conferred elsewhere in the statute. It is true that to attain to the status of a regulation of the commission having the force of law, such as that involved in *Hyde* v. *Connecticut Co.*, 122 Conn. 236, 188 Atl. 266, it must be promulgated under and by virtue of authority "conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred." *Backus-Brooks Co.* v. *Northern Pac. Ry. Co.*, 21 Fed. (2d) 4, 19; *Siler* v. *Louisville & N. R. Co.*, 213 U. S. 175, 194, 29 Sup. Ct. 451; *Root* v. *New Britain Gas Light Co.*, 91 Conn. 134, 99 Atl. 599. In the statutes providing for the regulation of common carriers of passengers by motor vehicles for hire (Public Acts, 1921, Chap. 77, § 2) the public utilities commission "is given express authority to make regulations as to the operation of motor busses, including such as concern the convenience and safety of passengers and the public." *Roden* v. *Connecticut Co.*, 113 Conn. 408, 416, 155 Atl. 721; General Statutes, 1930, § 3850. Similar provision was made regarding operation of taxicabs. Public Acts, 1929, Chap. 292, § 2; General Statutes, Cum. Sup. 1935, § 1425c. Section 3624 of the General Statutes confers upon the commission authority to make rules on numerous specified subjects concerning maintenance and operation of railroads, and § 3718 authorizes general orders regarding grade-crossings. Section 3785 provides that the commission may make regulations controlling the movements of cars of

street railways. In the statute now under consideration, § 575c contains a provision that "the commission shall have authority to prescribe regulations for motor private carriers who occasionally offer themselves for hire or to transport goods other than their own;" § 582c authorizes "reasonable regulations and rates or charges covering the operations of motor common carriers," and § 590c empowers the commission to prescribe "regulations, minimum rates and charges covering the operation of motor contract carriers in competition with motor common carriers," but it is doubtful if these provisions may be construed as conferring authority to make regulations other than concerning rates or charges, to which these sections, respectively, pertain.

The power conferred by § 581c, "to decide the question of financial responsibility on the individual merits of the applicant and to require that such financial responsibility be adequate" affords no authority, expressly or by admissible inference, to make general regulations governing the subject. Section 605c is similar in wording to § 9 of Chapter 77 of the Public Acts of 1921 and § 9 of Chapter 292 of the Public Acts of 1929, above referred to, but, as we have noted, both these acts contained express provision for rules and regulations, which therefore were "required under the provisions of [the] act." The sufficiency of § 605c or § 598c to confer power to make such regulations without specific provisions authorizing them, such as those above mentioned, and which we are not able to insert or to supply by inference is at least open to doubt. However, this does not compel or, of itself, warrant a conclusion that denial of the plaintiff's application was "unlawful and in excess of the authority vested in the defendants" which is the specific question we are considering. Although Docket 6253 be not

effective as an order or regulation so authorized as to be entitled to the force and effect of law, yet the commission, under its expressly conferred powers to require adequate financial responsibility of each applicant, could impose any reasonable requirements regarding insurance which it would accept in lieu of a showing of adequate financial responsibility of the applicant. Such requirements, obviously, may include both amount of insurance and financial stability of the insurer, and there is no unreason in an insistence, further, that the insurance be by a policy issued by a company authorized to do business in this State. *University Overland Express, Inc.* v. *Alsop,* supra; *Sprout* v. *South Bend,* 277 U. S. 163, 168, 48 Sup. Ct. 502. The reason for the latter requirement is not fully satisfied by the appointment of an agent for service of process in this State. Important as it is that an injured party have the right to sue the insurer in this State upon a judgment obtained here against the insured who inflicted the injury, the financial responsibility of the insurer is a paramount consideration. Substantial safeguards in this respect are afforded by the conditions under which, only, nonresident and foreign insurance companies are licensed by the insurance commissioner to do business in this State, e. g. §§ 4114, 4121, 4122, 4215 of the General Statutes.

It appears from the record that the question of the financial responsibility of the plaintiff was decided on the individual merits of the applicant, after hearings, and as the plaintiff made no request to be permitted to operate as a self-insurer, the necessary alternative was insurance and the requirements, in that respect, as a condition of the granting of a permit were not unreasonable and were within the powers of the commission to require adequate financial responsibility. The validity of the denial of the plaintiff's application

was not dependent upon the effectiveness of Docket No. 6253 as a regulation, in the sense which we have discussed. While various factors might enter into the determination whether an individual applicant was, without the requirements of insurance or other like protection for the public, financially responsible, once it is determined that he is not, no such variant circumstances enter into the question as to the amount and character of insurance required as an alternative protection. The provisions of Docket 6253 may well be regarded as no more than a declaration of a general and uniform policy to be observed by the commission in requiring financial responsibility in the case of applicants who fail to establish that they are financially responsible apart from any requirement of additional security, and in the nature of a rule of procedure, as to the adoption of which no impropriety is suggested or discovered.

The second question is: "(b.) Is said order and decision of the defendants unreasonable and arbitrary and does it deprive the plaintiff of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States?" While the question, in terms, relates to the "order and decision" only, the defendants have construed it as presenting the issue whether or not the statute under which the decision was made transgresses the "due process clause," and accordingly have devoted their brief and argument thereon to a justification of the statute as a proper exercise of the police power of the State. "Due process of law . . . means such an exertion of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." 2 Cooley, Constitutional

Limitations (8th Ed.) p. 741; *Water Commissioners* v. *Johnson,* 86 Conn. 151, 162, 84 Atl. 727. "Due process of law" is "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of rights and distributive justice." *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 201, 132 Atl. 561; *Camp* v. *Rogers,* 44 Conn. 291, 297; 2 Cooley, Op. Cit., p. 739. The general right of the State, under its police powers, to regulate travel by public service motor vehicles upon its highways, and to protect the safety thereof, except so far as the field is occupied by Congress as to interstate commerce, is well established. *University Overland Express, Inc.* v. *Alsop,* supra; *Silver* v. *Silver,* 108 Conn. 371, 377, 143 Atl. 240; *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248; *State* v. *Johnson,* 75 Mont. 240, 251, 243 Pac. 1073; note, 51 A. L. R. 821 et seq. A large discretion is necessarily vested in the Legislature as to what protection the interests of public security require. *Cotter* v. *Stoeckel,* supra, p. 244. Such protection manifestly may include a requirement of financial responsibility for the payment of damages inflicted through negligent operation. *University Overland Express, Inc.* v. *Alsop,* supra; *Hicklin* v. *Coney,* 290 U. S. 169, 171, 54 Sup. Ct. 142; Huddy, Automobile Law (9th Ed.) p. 437. Provision for insurance in an adequately responsible company, as a substitute for established financial responsibility of the operator, is clearly within the scope of a general statutory requirement of such responsibility.

The procedural aspect of due process is fully satisfied under the statute and in the present case. It is provided (§ 581c) that no application thereunder shall be denied except after hearing, and that the question of financial responsibility shall be decided on the individual merits of the applicant. Under § 604c, pro-

vision is made for appeal, by any person aggrieved, to the Superior Court. "Thus," as was said of Chapter 77 of the Public Acts of 1921, supra, "due process of law is accorded to the applicant." *Lane* v. *Whitaker*, 275 Fed. 476, 481. Also alleged arbitrary action on the part of the commission in an individual case could not affect the question of constitutionality—a remedy for such action being provided for by appeal to the Superior Court by the party feeling aggrieved thereby. Idem, p. 481. Neither the statute, in the respects here involved, nor the order of the commission contravenes the "due process" clause.

Indeed, the plaintiff does not so claim or argue here, but contends, instead, that "the statute unlawfully discriminates against the plaintiff," in effect claiming violation of the "equal protection" clause of the same amendment. That clause is calculated to secure to all persons similarly situated equal protection, under the law, in the enjoyment of rights belonging to all such persons. *State ex rel. Brush* v. *Sixth Taxing District*, supra, p. 200. Specifically, the plaintiff's criticism of the statute is that it involves an unconstitutional discrimination against motor common carriers operating over a regular route or routes in favor of those who do not so operate. It points out that "motor common carrier" is defined in § 575c (d) as "any person who undertakes to transport property . . . for the general public between points within this state by motor vehicle for compensation" and "motor contract carrier" as "any person not included under subdivision (d) . . . , who, under special and individual contracts or agreements, transports property between points within this state by motor vehicle for compensation . . ."; that those motor common carriers who operate "over a regular route or routes between points in this state" are required (§ 577c) to obtain a permit

to so operate, and all motor contract carriers are required to secure a permit (§ 585c) but no such requirement is applied to motor common carriers other than those operating "over a regular route or routes." That the plaintiff's claim that this differentiation involves an unconstitutional discrimination must have reference and recourse to the equal protection clause rather than that pertaining to due process, appears from the distinction, already noted, between these clauses and their purpose and scope, respectively. As we have indicated, we do not regard an attack upon the statute under the equal protection clause as fairly within the purview of the question reserved. The defendants have, naturally we think, so construed it and we are without the benefit of facts, considerations and arguments germane to a justification of the classifications which are attacked, which doubtless would have been advanced on their behalf had they regarded the issue as involved. Therefore in answering the question we have confined ourselves to the only issue which we, as well as the defendants, construe it as fairly presenting—claimed violation of the due process clause.

The answer to each of the two questions is "No."
No costs will be taxed in this court.

In this opinion the other judges concurred.