JANICE PROCTOR *v.* SIMEON SACHNER

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 11—decided November 21, 1955

*David Cramer,* for the appellant (defendant).

*Francis V. Manion,* petitioner's representative, for the appellee (plaintiff).

DALY, J. The defendant has appealed from a judgment rendered by the Court of Common Pleas in Hartford County directing him to pay $60 monthly for the support of the minor child of the parties.

The plaintiff and the defendant were married August 2, 1943. On August 7, 1944, a daughter was born to them. On March 6, 1945, the parties executed a separation agreement. It provided that the defendant, upon the termination of his military service, would pay $5 weekly for the support and maintenance of the minor child "until and unless

otherwise provided by an order of a court with proper jurisdiction over the subject matter and the parties." The marriage was dissolved March 16, 1945, by a decree of the Common Pleas Court of Montgomery County, Ohio. The custody of the minor child was awarded to the plaintiff. The divorce decree provided that the "separation agreement entered into by the parties, a copy of which is attached, is made part hereof, and both parties are subject to the terms thereof, and same is hereby ratified and confirmed." The decree has never been modified. The defendant lives in Bristol, Connecticut. He is married and has three minor children with whom he lives.

On April 15, 1954, the plaintiff filed a petition in the Common Pleas Court in Warren County, Ohio, in a proceeding against the defendant to compel him to support their minor child, alleging that the necessary monthly expenses of the child amounted to $65. The plaintiff appeared in that court on April 20, 1954, and was examined by the presiding judge. The hearing was ex parte and without notice to the defendant. The judge, who examined the petitioner under oath, certified that the proceeding was commenced under the provisions of the Uniform Reciprocal Enforcement of Support Act of Ohio; that according to the testimony of the petitioner "the needs of the dependent named in the petition for support from the respondent [are] the sum of $60.00 per month" and that in his opinion "the petition sets forth facts from which it may be determined that the respondent owes a duty of support and that such petition should be dealt with according to law." He ordered that the certificate, together with certified copies of the petition, be transmitted to the Court of Common Pleas in Hartford County.

On June 11, 1954, the defendant was summoned to appear before the Court of Common Pleas in Hartford County on June 18, 1954, to show cause why the order for support prayed for in the petition should not be made. A hearing was had upon the petition and, on June 25, 1954, the defendant was ordered and directed to pay $65 each month for the support of the minor child. On July 2, 1954, the defendant appeared by counsel and moved that the order be modified in its entirety, canceled and revoked. On September 24, 1954, the trial court modified the decree and ordered the defendant to pay $60 each month for the support of the minor child. It is admitted that the defendant is able to pay that sum.

The problem of enforcing duties of support has always been difficult. In the past, an errant husband could avoid the enforcement of his responsibility to support his dependents by the simple expedient of crossing state lines. Sections 2434c-2462c of the 1953 Cumulative Supplement to the General Statutes, contained in chapter 415b, entitled "Uniform Reciprocal Enforcement of Support," were enacted for the purpose of providing an efficacious mode of procedure to compel performance by those who are under a duty to support dependents. Our act, like those passed in many other states, including Ohio, contemplates a uniform two-state reciprocal procedure.

The defendant claims that the Ohio divorce decree ordered him to pay $5 weekly, that it has not been modified and that, consequently, it is determinative of the amount which the trial court could order the defendant to pay. He contends that the judgment directing him to pay $60 per month was beyond the power of the court and void, and that the court could not order him to pay any sum greater than $5

weekly. As was stated above, the separation agreement, containing the provision that the defendant would pay $5 weekly "until and unless otherwise provided by an order of a court with proper jurisdiction over the subject matter and the parties," was incorporated, as it properly could be, in the divorce decree. *Koster* v. *Koster,* 137 Conn. 707, 711, 81 A.2d 355. By the terms of the agreement and the divorce decree, the amount of the payments to be made by the defendant was subject to change by a court having jurisdiction. A judgment for support rendered in the court of a foreign state may be modified as to future support by a court of competent jurisdiction in this state if the court of the foreign state has the power under the law of that state to make such a modification. *Freund* v. *Burns,* 131 Conn. 380, 383, 40 A.2d 754; see *German* v. *German,* 122 Conn. 155, 164, 188 A. 429.

The defendant maintains that the plaintiff's petition was not filed in an "initiating state" as such a state is defined in § 2434c.[1] He claims that, since under subsection (6) of § 2434c[2] the trial court, in enforcing an order for support made by the Superior

---

[1] "Sec. 2434c. DEFINITIONS. As used in this chapter, unless the context requires otherwise: (1) 'State' includes any state, territory or possession of the United States and the District of Columbia in which this or a substantially similar reciprocal law has been enacted. (2) 'Initiating state' means any state in which a proceeding pursuant to this or a substantially similar reciprocal law is commenced. . . ."

[2] "Sec. 2434c. . . . (6) 'Duty of support' includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance or otherwise. Where any order for the payment of alimony or support to or on behalf of any obligee has been made by the superior court of this state, the amount of such order shall be accepted as determinative of the measure of such obligation, and such order may be enforced by the court of common pleas through proceedings under this chapter."

Court of this state, could not require a party to make payments greater in amount than those ordered by the Superior Court, and there is no like provision in the Ohio act, a substantially similar reciprocal law has not been enacted in the state of Ohio. While the word "similar" has at times been construed as synonymous with "same" or "identical," its usual significance is that contained in Webster's New International Dictionary (2d Ed.): "Nearly corresponding; resembling in many respects; somewhat like; having a general likeness." The word as ordinarily used implies an allowance for some degree of difference. *McLaughlin* v. *Poucher,* 127 Conn. 441, 446, 17 A.2d 767. Identity in language is not essential to reciprocal operation of the two acts with which we are concerned. *Commonwealth* v. *Shaffer,* 175 Pa. Super. 100, 105, 103 A.2d 430. The Ohio statute is substantially similar to and reciprocal with the Connecticut law.

The defendant claims that the sections of the statutes comprised in chapter 415b, entitled "Uniform Reciprocal Enforcement of Support," attempt to confer extraterritorial jurisdiction on the Ohio court and are unconstitutional. He asserts that the Ohio court in which the petition was filed made a finding of fact without notice to him that any proceeding was under way; that he has been denied the right of cross-examination; that the finding of fact is in effect a recommendation in the nature of a judicial decree based upon hearing only one side of the case; that the fact that the trial court accepted the amount found to be needed for the support of the minor child indicates the effect which it gave to the finding of the Ohio court in which the petition was filed and that he has been deprived of the due process of law guaranteed by the constitution of the United States

and the constitution of this state. As was stated above, the judge who examined the petitioner under oath certified that according to her testimony "the needs of the dependent named in the petition for support from the respondent [are] the sum of $60.00 per month" and that in his opinion "the petition sets forth facts from which it may be determined that the respondent owes a duty of support and that such petition should be dealt with according to law." He did not make a finding of fact. Section 2448c[3] prescribes the duty of the court of this state as the responding state, and § 2451c[4] governs the procedure.

---

[3] "Sec. 2448c. DUTY OF THE COURT OF THIS STATE AS RESPONDING STATE. When the court of this state, acting as a responding state, receives from the court of an initiating state the aforesaid copies, it shall (1) docket the cause, (2) notify the petitioner's representative, (3) set a time and place for a hearing, and (4) take such action as is necessary in accordance with the laws of this state to obtain jurisdiction, including issuance of summons to the respondent."

[4] "Sec. 2451c. PROCEDURE. The court shall conduct proceedings under this chapter in the manner prescribed by law for an action for the enforcement of the type of duty of support claimed, and if the respondent enters a verified denial of any of the material allegations thereof, the judge presiding at such hearing shall stay the proceedings and transmit to the court in the initiating state a transcript of the official proceedings, showing the denials entered by the respondent. Upon receipt by the court in the initiating state of such transcript, such court shall take such proof, including the testimony of the petitioner and the petitioner's witnesses and such other evidence as the court may deem proper, and the court shall make its recommendation, based on all of such proof and evidence, and shall transmit to the court in the responding state an exemplified transcript of such proof and evidence and of its proceedings and recommendation in connection therewith. Upon the receipt of such transcript, the court in the responding state shall resume its hearing in the proceeding and shall give the respondent a reasonable opportunity to appear and reply. Upon the resumption of such hearing, the respondent shall have the right to examine or cross-examine the petitioner and the petitioner's witnesses by means of depositions or written interrogatories, and the petitioner shall have the right to examine or cross-examine the respondent and the respondent's witnesses by means of depositions or written interrogatories."

The defendant was summoned to appear to show cause why the order for support prayed for by the petitioner should not be made. He did not appear until after the time set and then only after an order had been made. Although he had the right to appear on June 18, 1954, and show cause why the order for support prayed for should not be granted, to file a verified denial of any of the material allegations of the petition and to examine or cross-examine the plaintiff and her witnesses by means of depositions or written interrogatories, as provided in § 2451c, he failed to do so.

In the case of Smith v. Smith, 125 Cal. App. 2d 154, 270 P.2d 613, the proceeding was commenced by the filing of a petition for the support of a minor child in this state against a California defendant. The court said (p. 156): "The support law is designed to enable a dependent in one state to secure money for support from a person residing in another state who is legally liable for the support of the dependent. Its purposes are to improve and extend by reciprocal legislation the enforcement of duties of support." The Court of Appeals of Kentucky considered the question of the constitutionality of the reciprocal enforcement of support law of that state in Duncan v. Smith, 262 S.W.2d 373, and stated (p. 377): "Actually, the Act does not attempt to confer extraterritorial jurisdiction. The court of the initiating state exercises no jurisdiction over the respondent, but merely serves as a local agency of convenience for the court of the responding state. The latter court acquires jurisdiction of the respondent by virtue of personal service upon him, and exercises its jurisdiction over him solely within the confines of its state. . . . The fact that the petitioner is not required to be physically pres-

ent in the responding state is no obstacle . . . ."

The due process clause of the fourteenth amendment to the federal constitution does not guarantee to the citizen of a state any particular form or method of state procedure. "Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it." *Dohany* v. *Rogers,* 281 U.S. 362, 369, 50 S. Ct. 299, 74 L. Ed. 904; *Missouri ex rel. Hurwitz* v. *North,* 271 U.S. 40, 42, 46 S. Ct. 384, 70 L. Ed. 818. "Due process of law . . . means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." 2 Cooley, Constitutional Limitations (8th Ed.) p. 741; *John J. McCarthy Co.* v. *Alsop,* 122 Conn. 288, 296, 189 A. 464. Due process of law is "that law of the land in each State, which derives its authority from the inherent and reserved powers of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure." *Hurtado* v. *California,* 110 U.S. 516, 535, 4 S. Ct. 111, 292, 28 L. Ed. 232.

"The provisions of the Fourteenth Amendment to the Constitution of the United States, guaranteeing the equal protection of the laws and due process of law, have substantially the same meaning as the corresponding provisions contained in §§ 1 and 12 of Article First of our constitution and, therefore, im-

posed no new limitation upon the power of the people of this state to determine their civil rights by their fundamental law." *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A.2d 383; *Cyphers* v. *Allyn,* 142 Conn. 699, 703, 118 A.2d 318. The defendant has not been deprived of due process of law.

There is no error.

In this opinion the other judges concurred.