**ROGERS v. ATLANTIC GREYHOUND CORPORATION et al.**

No. 175.

District Court, S. D. Georgia, Augusta Division.

July 2, 1943.

Paul T. Chance, of Augusta, Ga., for plaintiff.

Bussey, Fulcher & Hardin, of Augusta, Ga., for defendants.

LOVETT, District Judge.

The question now for decision in this case may be stated this way. May an insurance carrier be joined as a defendant with a motor common carrier in a suit brought in Georgia by a passenger on an interstate journey for personal injuries

caused by the carrier's negligence in another state. The carrier had qualified with and obtained certificates to do both an interstate and intrastate business from the appropriate federal and state authorities.

The answer depends upon whether the Motor Carrier Act of Georgia[1] is applicable. If it is, the insurance carrier is jointly liable with the motor carrier and it is permissible to join both in the same action.[2] It is otherwise under the Federal Motor Carrier Act, 1935, now known as part 11 of the Interstate Commerce Act.[3]

The plaintiff, a resident of Georgia, purchased from the defendant bus company, not a Georgia corporation, a ticket from Portsmouth, Virginia, to Wrightsville, Georgia, where she lived. The defendant's bus line terminated at Augusta, Georgia, but she had a through ticket. She expected to get on another bus of a connecting line on arrival in Augusta. En route, while in South Carolina and before reaching Georgia, it is alleged the defendant negligently drove its bus off the highway and into a river and the plaintiff was injured. The suit was brought in this court, diversity of citizenship of the parties existing, against the motor carrier and the insurance carrier. Both move to dismiss the insurance carrier as a defendant on the ground it has been improperly joined.

■ It is conceded plaintiff was an interstate passenger—on an interstate journey; that the bus on which she was riding was an interstate bus; and that she was injured in South Carolina before the bus arrived at its terminus in Augusta, Georgia. Under these circumstances I think the Act of Congress regulating motor common carriers of passengers controls the rights and remedies of the passenger, and that the Georgia Act is not applicable.

In 1931 Georgia enacted its Motor Common Carrier Act. It prescribed conditions under which such motor vehicles would be permitted to operate upon highways, a certificate of convenience and necessity was required. The Act recognized the paramount province of Congress to regulate commerce among the states and provided by section 30[4] that carriers engaged solely in interstate commerce might operate without a certificate from the Georgia Commission but should register the routes they traveled, etc. Section 7 of the Act[5] made it impossible for one seeking to do an intrastate business to operate without giving a bond or indemnity insurance in some insurance company qualified to do business in the state for the protection in case of passenger vehicles of the passengers carried and of the public against injury proximately caused by the negligence of the carrier. It should be noticed this section of the Act begins by saying "no certificate shall be issued", etc., unless the holder gives the bond or insurance, clearly suggesting, I think, it related only to the intrastate operations. The title of the Act[6], stating its purpose, among other things recites it is an Act to "protect the *public* as to the operation of such carriers". (Emphasis mine.) Section 30 which required an interstate carrier to register only its routes also contained a provision relating to a bond or indemnity insurance, and in this language: "And such motor carriers shall give the bond or indemnity insurance prescribed by this Act (omitting the protection in respect of their own passengers and cargoes)"[7], thus indicating clearly by the parenthetical clause that the Georgia General Assembly either doubted its authority constitutionally to legislate as to interstate passengers and cargoes or looked upon them as adequately protected by the bond or indemnity insurance required by the Act of Congress, as indeed they were[8]. By the Act of 1937[9] section 7 of the 1931 Act was re-written by adding a sentence making it permissible to join the motor carrier and the insurance carrier in the same action, but section 30 remained unaltered. Before the 1937 Act the joint action in the state courts could not be brought.[10] Afterwards it could, and the Act so permitting was held by the Georgia courts not to be violative of the State Con-

---

[1] Ga.Code, Sec. 68-601 et seq.

[2] Ga.Code, Sec. 68-612, as amended in 1937, Ga.L.1937, p. 730, 731.

[3] 54 Stat. 919, 49 U.S.C.A. § 301 et seq.

[4] Ga.L.1931, p. 211, Ga.Code, Sec. 68-633.

[5] Ga.L.1931, p. 203, Ga.Code, Sec. 68-612.

[6] Ga.L.1931, p. 199.

[7] Ga.L.1931, p. 211, Ga.Code, Sec. 68-633.

[8] 49 U.S.C.A. § 315.

[9] Ga.L.1937, p. 727.

[10] Russell v. Burroughs, 183 Ga. 361, 188 S.E. 451; Russell v. Ogletree, 184 Ga. 145, 190 S.E. 590.

stitution.[11] No question of interstate commerce was involved in these cases.

■ "It is well settled that a state may not require a carrier to furnish liability insurance covering persons and property being transported in interstate commerce". Continental Casualty Co. v. Shankel, 10 Cir., 88 F.2d 819(2), 823.

■ Before Congress legislated, it was held by the Supreme Court of the United States that because there were grave dangers incident to the operation of motor vehicles a state might require users of such vehicles on the public highways to provide adequate insurance for the payment of judgments recovered for certain injuries resulting from their operation. "Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, *if limited to damages suffered within the state by persons other than the passenger*". Sprout v. South Bend, 277 U.S. 163, 172, 48 S.Ct. 502, 505, 72 L.Ed. 833, 62 A.L.R. 45. (Emphasis mine.) Cf. Cobb v. Department of Public Works, D.C., 60 F.2d 631(6), 640, 641. As to the passenger-carrier and consignor-carrier relationship in interstate commerce it seems to me Congress has completely occupied the field of legislation touching indemnity insurance, and that no room is left for the state to legislate in that regard. There are other fields not occupied, such as, regulation of the weight and size of vehicles, etc. South Carolina State Highway Dept. v. Barnwell Bros., Inc., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734. And a different situation arises where local citizens, not passengers, are injured on the highways of the state. Acme Freight Lines v. Blackmon, 5 Cir., 131 F.2d 62, 63(3, 4), 64; Be-Mac Transportation Co. v. Lairmore, Okl. Sup., 129 P.2d 192; Tucker v. Casualty Reciprocal Exchange, D.C., 40 F.Supp. 383; Gallahar v. Rheman Co., this day decided by this court, 50 F.Supp. 655. In the Tucker, Lairmore, and Gallahar cases cited it was carefully pointed out that no question of interstate relation of a shipper or passenger was involved.

The precise question here presented was before Judge Porterie in Grier v. Tri-State Transit Co., D.C., 36 F.Supp. 26, and he there held a similar direct action statute of the state of Louisiana was inapplicable to a suit by a passenger even though (unlike here) the injury occurred in the state of the statute invoked. See, also, University Overland Express, Inc., v. Alsop, 122 Conn. 275, 189 A. 458; University Overland Express, Inc., v. Griffin, 89 N.H. 395, 200 A. 390; Service Mut. Liability Ins. Co. v. United States, D.C., 18 F.Supp. 613; Apger v. New York Cent. R. R., 310 Mass. 495, 38 N.E.2d 652(5, 6), 656.

■ It is earnestly urged, however, that when the motor carrier chose to do an intrastate business—which it did not have to do—and applied for and obtained a certificate from the Georgia Public Service Commission granting the permission, a condition of which was that a bond or indemnity insurance making the insurance carrier and the motor carrier subject to suit in the same action be filed and the insurance was furnished in compliance with the Georgia Motor Common Carrier Act, it must be assumed that both motor and insurance carriers impliedly consented to be sued together, and the Blackmon case, supra, is strongly relied on to support that view, without regard to whether the vehicle causing the injury is intrastate or interstate. That seems to be so, provided, and only when, the injured person is a nonpassenger or nonshipper and the injury occurs within the state. The Georgia statute is designed to protect the "public" whose safety may be endangered by the carrier's operations as distinguished from those having an interstate relationship. It will not be assumed by me that the state of Georgia attempted to enact legislation having an extraterritorial effect. Let us suppose in the case at bar that the motor carrier laws of South Carolina are patterned after the Federal Motor Carriers Act and do not authorize the joint action, what law then shall be applied—South Carolina, Georgia or Federal?' For these very reasons I conclude that Congress contemplated uniformity; otherwise, these being transitory actions, an injured plaintiff might seek out the carrier in that jurisdiction where the laws seemed most favorable and there sue, whatever the resulting inconvenience to the defendant. No such inconvenience arises if the suit is filed in the state where the injury occurred or where the plaintiff resides if the federal law is controlling. When judgment is obtained and not paid, the plaintiff here may

---

[11] Lloyds America v. Brown, 187 Ga. 240, 200 S.E. 292; See also Brown v. Union Bus Co., 61 Ga.App. 496, 6 S.E. 2d 388.

still sue at home, for the Rules of the Interstate Commerce Commission require the insurance carrier to be a company qualified to do business here as well as in every other state which its busses enter.[12]

Let an order dismissing the insurance carrier without prejudice to its ultimate liability be presented.

---

[12] Rule VIII, I. C. C. Rules and Regulations effective November 16, 1936, p. 5.