**PENNSYLVANIA GREYHOUND LINES, Inc. v. BOARD OF PUBLIC UTILITY COM'RS et al.**

Civ. No. 650.

United States District Court
D. New Jersey.

Sept. 25, 1952.

McCarter, English & Studer, Augustus C. Studer, Jr., Newark, N. J., for plaintiff, Donald S. Bowie, Jr., Newark, N. J., Harold J. Drescher, New York City, of counsel.

Theodore D. Parsons, Atty. Gen. of State of New Jersey, Edward S. Binkowski, Deputy Atty. Gen. of State of New Jersey, for defendants.

FORMAN, Chief Judge.

This is a motion by the plaintiff for summary judgment in favor of the plaintiff and against the defendants made pursuant to rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.

The plaintiff in this case is Pennsylvania Greyhound Lines, Inc., a Delaware corporation, with its principal office in the city of Cleveland, Ohio. The defendants are the Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey, and Theodore D. Parsons, Attorney General of the State of New Jersey.

The essence of the complaint is that an Interstate Commerce Commission order, made pursuant to a valid federal statute and regulations, permitting the plaintiff to be a self-insurer, renders inoperative the requirement of the defendant Board of Public Utility Commissioners that plaintiff carry insurance. Plaintiff demands a judgment declaring:

"(a) The legality, constitutionality and validity of the provisions of N.J. R.S. 48:4–19 [N.J.S.A.] with respect to the autobuses of plaintiff operating in interstate commerce in and through the State of New Jersey and subject to the provisions of part II of the Interstate Commerce Act and the rules and regulations promulgated by the Interstate Commerce Commission under and by virtue of said Act, particularly the provisions thereof with respect to security for the protection of the public;

"(b) That the provisions of part II of the Interstate Commerce Act, U.S. Code, Title 49, Sections 301–327, particularly Section 315 [49 U.S.C.A. §§ 301–327, 315], and the rules and regulations of the Interstate Commerce Commission promulgated by its order in Ex Parte No. MC–5 under and by virtue of said Act of Congress have superseded N.J.R.S. 48:4–19 [N.J.S.A.] and that said Act of Congress and said rules and regulations of the Interstate Commerce Commission have rendered said statute of the State of New Jersey unconstitutional and inoperative with respect to the autobuses of plaintiff operating in interstate commerce in and through the State of New Jersey;

"(c) That defendant, Board of Public Utility Commissioners, Department of Public Utilities, is without jurisdiction, authority or power to require or compel plaintiff to comply with the provisions of N.J.R.S. 48:4–19 [N.J.S.A.] with respect to its autobuses operating in interstate commerce in or through the State of New Jersey;

"(d) The rights and other legal relations of the plaintiff in the premises."

Plaintiff is a motor carrier engaged in the transportation of passengers for compensation by autobus in interstate commerce in and through twelve contiguous states, including the State of New Jersey. Plaintiff either transports passengers through the State between points outside of it, or receives or discharges, but does not receive and discharge passengers within the State.

Under New Jersey law it is provided that:

"The board of public utility commissioners may require operators of such interstate busses to carry insurance equal in amount to that required by law of operators of busses carrying passengers between points in this state, against loss by reason of the liability imposed by law for damages on account of bodily injury or death suffered by any person as a result of an accident occurring by reason of the ownership, maintenance or use of such autobusses.

"The board may require the operators of such autobusses to file with it duplicates of insurance policies or such other records as in the judgment of the board will show that the operators carry insurance against loss for liability for damages. * * *" N.J.S.A. 48:4–19.

Plaintiff, acting pursuant to the requirements of the Board, has carried and continues to carry insurance in amounts required by the Board and has filed duplicates of the policies or certificates of insurance.

Plaintiff, being an interstate carrier, is subject to the provisions of part II of the Interstate Commerce Act and the rules and regulations promulgated by the Interstate Commerce Commission under this Act. Its interstate bus operations have been and are authorized by the Commission. Provision is made for insurance under the federal law as follows: .

"No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under such certificate or permit, or for loss or damage to property of others. The Commission may, in its discretion and under such rules and regulations as it shall prescribe, require any such common carrier to file a surety bond, policies of insurance, qualifications as a self-insurer, or other securities or agreements, in a sum to be determined by the Commission, to be conditioned upon such carrier making compensation to shippers and/or consignees for all property belong (1) to shippers and/or consignees, and coming into the possession of such carrier in connection with transportation service. * * *" 49 U.S.C.A. § 315.

"(1) So in original."

The Interstate Commerce Commission, by its order in Ex parte No. MC–5, prescribed rules and regulations governing the filing by motor carriers subject to the Act of surety bonds, policies of insurance, and qualifications as a self-insurer and the approval thereof. These rules and regulations include a provision permitting a motor carrier to qualify as a self-insurer upon meeting certain conditions. Plaintiff applied to the Commission for authority to self-insure, and the Commission granted approval by its order No. Mc–1502, dated October 20, 1948.

On or about September 26, 1950, plaintiff applied to defendant, Board of Public Utility Commissioners, for leave to withdraw its evidences of insurance coverage filed with the Board pursuant to the provisions of N.J.R.S. 48:4–19, N.J.S.A., and to determine and direct that the New Jersey statutory provisions did not apply to the plaintiff, as these provisions had been superseded by federal regulation. The Board denied plaintiff's application by its decision in Docket No. 5229, dated April 11, 1951, stating:

"We are of the opinion that it is not our function as an administrative agency of the State to determine in the circumstances here present, the question of whether the statute of the State relating to financial coverage by interstate motor carriers was rendered unconstitutional and inoperative by the enactment of the Federal Motor Carrier Act of 1935. The determination of this question is the province of our courts."

Without seeking further adjudication of the question in the New Jersey courts, plaintiff instituted this suit for a declaratory judgment, alleging, in substance, the above facts. In their answer the defendants deny none of the material facts, though they claim no knowledge or belief as to whether plaintiff applied for permission and was authorized to act as a self-insurer and whether plaintiff did become a self-insurer. Defendant alleged three separate defenses:

(1) plaintiff has an adequate remedy for any relief to which it may be entitled in the courts of New Jersey;

(2) the New Jersey statute expresses an important State policy and as a valid exercise of the police power its construction should first be made by the State courts, and

(3) the State statute does not contravene and is not inconsistent with any laws of the United States.

█ Plaintiff moved for a summary judgment, supporting by affidavits those allegations of which defendant claimed no knowledge or belief. These affidavits are not controverted, and thus no issue of fact arises.

The questions which must be resolved are whether this court has jurisdiction to hear this case, and, if so, whether it should, in its discretion, exercise its jurisdiction.

Under 28 U.S.C. § 2281 no interlocutory or permanent injunction restraining the enforcement, operation or execution of any state statute by restraining the action of any officer of such state in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under a state statute shall be granted upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges. In the present case, plaintiff seeks a declaratory judgment that, as applied to it, the New Jersey statute and regulation pursuant thereto are unconstitutional and inoperative, and the question arises as to whether the relief which plaintiff seeks would, in effect, restrain the enforcement of a state statute in the manner proscribed by § 2281 so as to require the consideration of a district court of three judges.

█ In deciding whether a suit for an injunction to restrain a state official upon the grounds of unconstitutionality of a state statute requires a three judge court, the United States Supreme Court has noted that two types of objections to state statutes have been made, both of which have their source in the United States Constitution. The substance of objections of the first type is the allegation that a state statute violates directly some constitutional provision. When an injunction is sought on that basis, a three judge court is necessary, Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616. The substance of objections of the second type is the allegation that the supremacy clause of the Constitution has rendered inoperative a state law which would be valid had not Congress chosen to legislate. Cases of this nature have been considered primarily ones involving interpretation of a federal statute and not constitutional cases within the meaning of § 2281. Consequently, a suit for an injunction against a state official in such circumstances need not be heard before a three judge court, Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249.

A fairly recent application of this classification of injunction suits is Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552. The State of Washington sold some of its school-land timber in a manner prescribed by its constitution and statutes. The United States Price Administrator sued in the federal district court to enjoin the State Commissioner of Public Lands from completing the sale, asserting that its consummation would constitute a violation of the Emergency Price Control Act and applicable regulations. Answering the State's contention that the case should have been tried by a three judge court, the Supreme Court stated:

"* * * But here the complaint did not challenge the constitutionality of the State statute but alleged merely that its enforcement would violate the Emergency Price Control Act. * *." 327 U.S. 92, 97, 66 S.Ct. 438, 441.

█ It would seem that the reasoning of Case v. Bowles, supra, would govern the instant case. Despite occasional broad language in the complaint, the plaintiff's case rests upon the proposition that the New Jersey statute is inoperative as it applies to it because congressional legislation and valid regulations pursuant thereto govern it, removing it from the area of state control, and not upon the proposition that the New Jersey statute is unconstitutional with-

out regard to federal legislation. Thus, even were § 2281 controlling in a suit for a declaratory judgment, a three judge court would not be necessary here.

Defendants advance the argument that, granting that this court has jurisdiction pursuant to 28 U.S.C. § 1337,[1] it should not, in its sound discretion, exercise this jurisdiction until plaintiff has sought state adjudication of the questions involved.

■ It is unquestioned that in certain circumstances a federal court whose jurisdiction is acknowledged will decline to exercise it. The equitable considerations which govern the court in deciding whether to decline to hear a case are substantially the same whether the complainant seeks an injunction or a declaratory judgment. See Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

A leading case on the question is Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, upon which defendants rely heavily. Application of the Railway to the Alabama Public Service Commission for permission to discontinue an *intrastate* passenger service was denied. Instead of appealing to state courts, as it could have done, the Railway sued for an injunction before a three judge district court, alleging that the action of the Commission deprived it of property in violation of the due process clause of the Fourteenth Amendment. An injunction was granted. In reversing this decision, the Supreme Court stated the following as its reasons for holding that the district court should have declined to exercise its jurisdiction:

"As adequate state court review of an administrative order based *upon predominantly local factors* is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discre-

tion exercised with the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,' is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the federal courts.' Considering that '[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,' the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts. * * *" 341 U.S. at pages 349–350, 71 S.Ct. at page 768. (Emphasis supplied.)

■ The Southern Railway case clearly expresses the reasons for the salutory rule that a federal court should decline in certain cases to hear suits concerning state legislation until the state courts have adjudicated the issues involved. The reasons for this policy are particularly apparent when state taxes or state regulation of economic activities are challenged on the basis that some general provision of the United States Constitution is violated. To adjudicate such a case, a federal court would have to attempt to construe state legislation, a matter which only a state court could undertake authoritatively, see Shipman v. DuPre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725. Lacking as thorough an understanding of local conditions as a state court, a federal tribunal might cause great confusion and a disruption of state regulatory and tax programs if it should attempt to hear a case before a state court has ruled on the state aspects of it, see Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Great Lakes Dock & Dredge Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

---

1. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

It would appear, however, that there is a vital distinction between the instant case and Southern Railway and other cases cited above. There the predominant factors were local in nature while here a federal regulatory scheme as well as a state one are drawn into question.

■ Deference to state regulatory measures does not require this court to forego its jurisdiction where, as here, its primary task will be to weigh the effects of federal legislation and regulation pursuant thereto as against state regulatory measures. This conclusion is supported by the approach of the Supreme Court in Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447. Plaintiffs were warehousemen operating under licenses granted by the Secretary of Agriculture as provided by the United States Warehouse Act, 7 U.S.C.A. § 241 et seq. Plaintiffs also were subject to certain regulatory jurisdiction of the Illinois Commerce Commission. One of the defendants, a customer of the plaintiffs, filed a complaint with the Illinois Commission alleging that plaintiffs were violating the Illinois Public Utilities Act. Plaintiffs moved to dismiss on the ground that the United States Warehouse Act superseded the authority of the Commission. This motion was denied, and the Commission set the cause for hearing on the merits. Plaintiffs thereupon brought suit in the United States District Court to enjoin, inter alia, further proceedings before the Commission. The Court of Appeals, Seventh Circuit, Board of Trade of City of Chicago v. Illinois Commerce Comm., 156 F.2d 33 reversed the district court's dismissal of the suit, holding that the United States Warehouse Act superseded state regulations. On review the Supreme Court did not suspend the litigation pending prior state adjudication of the question, but sought the intention of Congress in passing the Warehouse Act, as that would determine whether Illinois law had been superseded, or whether the industry was to be subject to two regulatory schemes.

In another case involving the same basic issue, the alleged conflict of federal and state regulation, the Court defined the duties of the federal judicial system as follows:

"It is said that the state and the United States have worked cooperatively in protecting consumers from vicious practices in the handling of processed butter; that any action by the state aids the policy of both in disposing of unfit food and that therefore a harmonious federal state relationship should not be hampered. Our duty to deal with contradictory functions of state and nation on any occasion and particularly when one or the other is challenged by private interests calls for the utmost effort to avoid conclusions which interfere with the governmental operations of either. Nothing could be more fertile for discord, however, than a failure to define the boundaries of authority. Clashes may and should be minimized by mutual tolerance but they are much less likely to happen when each knows the limits of its responsibility. And, it is only reasonable to assume that the theory of denying inconsistent powers to a state is based largely upon the benefits to the regulated industry of freedom from inconsistencies." Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, at page 169, 786, 62 S.Ct. 491, at page 503, 86 L.Ed. 754.

■ Having in mind these decisions and observing that the plaintiff, concededly an instrumentality of interstate commerce, is confronted with statutory regulations imposed by the federal government and others imposed by the State of New Jersey, I am constrained to regard it as the duty of this court to decide whether part II of the Interstate Commerce Act and regulations pursuant thereto render inoperative defendant Board's regulation of insurance requirements of carriers engaged in interstate commerce who are subject to regulations by the Interstate Commerce Commission.

■ Absent federal legislation upon the subject, states may, within the limits of reasonableness, regulate the use of their highways by common carriers engaged in interstate commerce, provided such use is

not prohibited altogether and provided that there is no discrimination against commerce. South Carolina State Highway Department, v. Barnwell Bros., 303 U.S. 177, 625, 58 S.Ct. 510, 82 L.Ed. 734; Hendrick v. Maryland, 235 U.S. 610, 35 S. Ct. 140, 59 L.Ed. 385. When, however, Congress does exercise its power in a field of interstate commerce so as to conflict with state regulation, otherwise valid, the state regulation becomes inoperative. The conflict of state and federal legislation is, of course, apparent, if Congress specifies that its regulation is to be exclusive. On the other hand, where Congress does not so specify, conflict may still be spelled out by implication.

When the federal act is silent as to whether it renders state regulation inoperative, the method of determining what is Congressional intent as to the effect on state legislation is illustrated by the Supreme Court's line of inquiry in the case of Cloverleaf Butter Co. v. Patterson, supra. To answer that question the Court inspected both the federal and state statutes and regulations closely in order to learn what was the purpose of each and what each required of the regulated activity. If continued existence of state operations hindered or was inconsistent with the federal program, it was reasonable to conclude that Congress intended to override state controls.

Applying that approach to this case, it is first necessary to examine the New Jersey and federal statutes and regulations. Title 49 U.S.C. § 315, as spelled out in the Interstate Commerce Commission Regulations, 49 C.F.R. § 174.1 et seq., indicates a purpose of protecting claims of all persons for personal injury or property damage caused by negligent operation, maintenance or use of interstate motor carriers. To accomplish this purpose the statute requires that before receiving a permit or certificate such a carrier must comply with the regulations of the Interstate Commerce Commission governing filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements. Provisions for qualification as a self-insurer are contained in 49 C.F.R. § 174.5(a), and, in accordance with this section, the Interstate Commerce Commission has permitted plaintiff to become a self-insurer.

Turning to N.J.R.S. 48:4-19, N.J.S.A. it can be seen that its purpose too is to protect the claims for damages of any person for bodily injury against interstate bus operators arising as a result of accident occurring by reason of the ownership, maintenance or use of an autobus. To effectuate this policy, the Board of Public Utility Commissioners may require interstate operators to carry insurance equal in amount to that required of intrastate operators. The Board may require filing of policies and approval thereof. Acting pursuant to N.J.R.S. 48:4-19, N.J.S.A., the Board has established minimum insurance requirements for interstate bus operators, which do not differ greatly from Interstate Commerce Commission requirements.[2] Pursuant to the provisions the state regulatory body required the plaintiff in the instant case to file evidence of insurance.

2. Below is a comparison of the minimum amounts of public liability insurance required by the Interstate Commerce Commission in I.C.C. Order, Ex-parte No. MC-5, April 13, 1951, effective October 31, 1951, 16 FR 3487, 5539 and the Board of Public Utility Commissioners of the State of New Jersey, pursuant to N.J.R.S. 48:4-36, effective June 17, 1948.

| Seating Capacity (Passengers) | | One Person | | All Persons in One Accident | |
|---|---|---|---|---|---|
| I. C. C. | B. P. U. C. | I. C. C. | B. P. U. C. | I. C. C. | B. P. U. C. |
| 7 or less | | $10,000 | | $30,000 | |
| 8 to 12 | 12 or less | 10,000 | $5,000 | 40,000 | $25,000 |
| 13 to 20 | 13 to 20 | 10,000 | 5,000 | 60,000 | 50,000 |
| 21 to 30 | 21 to 30 | 10,000 | 5,000 | 80,000 | 100,000 |
| 31 or more | 31 or more | 10,000 | 5,000 | 100,000 | 150,000 |

When plaintiff sought to withdraw this insurance as duplicative of the protection exacted from it under the authority of the Interstate Commerce Commission the New Jersey Board of Public Utility Commissioners understandably declined to grant its application stating frankly that its function was not to decide the legal question involved reserving that to the courts.

As far as can be determined, the precise question which arises in this case has not been passed upon by a federal court. State courts have ruled, however, that the insurance provisions of State Motor Carrier Acts, as pertaining to interstate carriers, are superseded by federal legislation. University Overland Express v. Griffin, 89 N. H. 395, 200 A. 390; University Overland Express v. Alsop, 122 Conn. 275, 189 A. 458.[3]

Here there is a conflict between federal and state regulation. Each purports to regulate insurance requirements of *interstate* bus operators; each protects the claims of all persons against these operators for personal injuries caused by improper operation of their busses, though it might be noted that federal protection extends to injuries to properties as well. Both the state and federal governments have delegated the authority to administer insurance requirements to an administrative body. In this case the federal government has preempted the field of regulation of insurance coverage to be carried by motor vehicle carriers in interstate commerce. It must be held therefore that the New Jersey statute, N.J.R.S. 48:4–19, N.J.S.A., regulating the insurance coverage of this plaintiff must give way to the federal legislation, 49 U.S.C. § 315 and regulations pursuant thereto, and is inoperative in its face, in the light of the fact that the plaintiff's operations within the State of New Jersey are solely interstate in character.

Judgment will be granted to the plaintiff, Pennsylvania Greyhound Lines, Inc., declaring that the New Jersey statute in question here, N.J.R.S. 48:4–19, N.J.S.A.,

has been rendered inoperative with respect to plaintiff's autobusses operating solely in interstate commerce in or through the State of New Jersey by the enactment of federal legislation, 49 U.S.C. § 315, and the regulations made pursuant thereto and that the defendant, Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey, lacks the power to require plaintiff to comply with insurance regulations imposed pursuant to said New Jersey statute.

Plaintiff's motion for summary judgment is granted to the extent of, and in conformity with this opinion. Let an order for judgment in accordance herewith be submitted.

---

**3.** It is interesting to note that this conclusion is also reached in an opinion by the Attorney General of New York, dated April 21, 1949, and in an opinion by the Attorney General of Utah, dated April 19, 1950.