Janice S. WATKINS and Jack L. Watkins, Plaintiffs,

v.

H.O. CROLEY GRANARY, a partnership composed of H.O. Croley, B.R. Croley and C.H. Croley, James Dupree and Guarantee Insurance Company, Defendants.

Civ. A. No. C82–63R.

United States District Court, N.D. Georgia, Rome Division.

September 23, 1982.

Anthony R. DeStefano, Rome, Ga., for plaintiffs.

Robert C. Semler, Dennis, Corry, Webb, Carlock & Williams, Atlanta, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

Plaintiffs filed suit against H.O. Croley Granary ("Croley"), Guarantee Insurance Company ("Guarantee") and James Dupree Young. Croley is a motor common carrier based in Alabama which engages solely in interstate commerce; Guarantee is Croley's liability insurer; and James Young is a Croley employee. The complaint alleges that James Young was negligently driving a Croley truck when he ran Janice Watkins off a Georgia highway, causing her serious injury. This order discusses Guarantee's motion to be dismissed from the present lawsuit pursuant to Fed.R.Civ.P. 12(b)(6).

Guarantee's argument centers around two statutes: Ga.Code Ann. § 68–612 (1980),[1] which allows a plaintiff to join a motor carrier and its liability insurer in the same action, and 49 U.S.C. § 10927 (1982), which provides for payment of a claim by an insurer after a final judgment has been recovered against the motor carrier it insures.[2] Guarantee contends that because Croley is engaged solely in interstate commerce, section 10927 preempts section 68–

1. Ga.Code Ann. § 68–612 (1980) provides:

No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried, and of the public against injury proximately caused by the negligence of such motor common carrier, its servants or agents; and in cases of vehicles transporting freight, to secure the owner or person entitled to recover therefor against loss or damage to such freight for which the motor common carrier may be legally liable; and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The commission shall approve, determine and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance in some indemnity insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. The commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the motor carrier so warrants. It shall be permissible under this Chapter for any person having a cause of action arising hereunder in tort or contract to join in the same suit the motor carrier and its surety in the event a bond is given. *If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action whether arising in tort or contract.*

(emphasis added).

2. Section 10927 provides in part:

(a)(1) The Interstate Commerce Commission may issue a certificate or permit to a motor carrier under section 10922 or 10923 of this title only if the carrier files with the Commission a bond, insurance policy, or other type of security approved by the Commission, in an amount not less than such amount as the Secretary of Transportation prescribes pursuant to, or as is required by, the provisions of section 30 the Motor Carrier Act of 1980. *The security must be sufficient to pay,* not more than the amount of the security, *for each final judgment against the carrier* for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles under the certificate of permit, or for loss or damage to property (except property referred to in paragraph (3) of this subsection), or both. A certificate or permit remains in effect only as long as the carrier satisfies the requirements of this paragraph.

49 U.S.C. § 10927(a)(1) (1982) (emphasis added).

612; and that because section 10927 conditions the payment of insurance on the existence of a final judgment against a motor carrier, the joinder of Guarantee in this action is premature.

■ Guarantee's argument highlights the distinction courts have drawn between suits brought by members of the public against motor carriers and suits brought against these carriers by their passengers. It is well-settled that federal motor carrier insurance requirements pre-empt Georgia statutory requirements when a dispute involves "[passengers or] property being transported in interstate commerce." *Rogers v. Atlantic Greyhound Corp.,* 50 F.Supp. 662, 664 (S.D.Ga.1943) (quoting *Continental Casualty Co. v. Shankel,* 88 F.2d 819, 823 (10th Cir.1937)); *Grier v. Tri-State Transit,* 36 F.Supp. 26, 28 (W.D.La.1940); *Pennsylvania Greyhound Lines, Inc. v. Board of Public Utility Commissioners,* 107 F.Supp. 521, 529 (D.N.J.1952). Judge Lovett explains the reasoning supporting this conclusion in *Rogers:*

> The Georgia [insurance provision] is designed to protect the 'public' whose safety may be endangered by the carrier's operations as distinguished from those persons having an interstate relationship [with the carrier, i.e. passengers]. It will not be assumed by me that the state of Georgia attempted to enact legislation having an extraterritorial effect. Let us suppose in the case at bar that the motor carrier laws of South Carolina are patterned after the Federal Motor Carriers Act and do not authorize the joint action, what law then shall be applied—South Carolina, Georgia or Federal? For these very reasons I conclude that Congress contemplated uniformity; otherwise, these being transitory actions, an injured plaintiff might seek out the carrier in that jurisdiction where the laws seemed most favorable and there sue, whatever the resulting inconveniences to the defendant. No such inconvenience arises if the suit is filed in the state where the injury occurred or where the plaintiff resides if the federal law is controlling.

*Rogers, supra.* It is equally well-settled that Georgia law is not preempted when a Georgia resident sues a carrier that has qualified to conduct both interstate and intrastate commerce in Georgia. *See Acme Freight Lines, Inc. v. Blackmon,* 131 F.2d 62, 64 (5th Cir.1942); *Gallahar v. George A. Rheman Co.,* 50 F.Supp. 655, 660 (S.D.Ga. 1943); *Tucker v. Casualty Reciprocal Exchange,* 40 F.Supp. 383, 385 (N.D.Ga.1941).

■ Guarantee contends that this last line of authority does not compel the application of Georgia law when a Georgia resident sues a motor carrier engaged solely in interstate commerce. The Supreme Court commented on this issue in *Sprout v. South Bend,* 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833 (1927). It stated in dicta that liability insurance provisions similar to Georgia's provision "are not, even as applied to [vehicles] engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the State by persons other than the passenger." *Id.* at 172, 48 S.Ct. at 505. *Sprout* was decided, however, before section 10927 and its predecessor, section 215, 49 U.S.C. § 315 (1963), were enacted.

The most recent case dealing with this issue is *Kimberly v. Bankers & Shippers Insurance Co.,* 490 F.Supp. 93 (N.D.Ga. 1980). *Kimberly* held that Georgia's insurance provision was not pre-empted by federal law. Citing *Rogers, supra,* Judge Evans stated that federal legislation only preempted regulations concerning "the transportation of goods and persons [i.e. passengers] in interstate commerce," and that "this is not the case with regard to the public." *Id.* at 95. She also noted that "[t]he state's interest in providing plaintiffs with the right to bring direct actions against insurers of intrastate carriers is equally strong in the case of interstate carriers when the injuries claimed are injuries to members of the public traveling on the state's highways." *Id.* At least one other court has reached a similar conclusion. *See Boyles v. Farmers Mutual Hail Insurance Co.,* 78 F.Supp. 706 (D.Kan.1948) (Kansas insurance provision, which is similar to

Georgia's provision, "is not ... an unreasonable burden on interstate commerce when construed not to apply to passengers and freight moving in interstate commerce").

The conclusion reached by *Sprout, Kimberly* and *Boyles* is sound for several reasons. First, section 68–612 places only an incidental burden on interstate commerce: it does not enlarge or limit the financial liability of insurers of motor carriers, but only procedurally affects the remedy for enforcing that liability. *See Missouri, Kansas & Texas Ry. v. Harris,* 234 U.S. 412, 420–21, 34 S.Ct. 790, 793–94, 58 L.Ed. 1377 (1913). Also, the countervailing state interest in protecting the claims of Georgia citizens who are injured on its highways and in allowing these plaintiffs to bring direct actions against insurers is strong. *See Kimberly, supra,* at 95.

 Second, the conflict between sections 68–612 and 10927 in determining when an insurer of a motor carrier can be sued does not compel pre-emption. Under *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1944), a state statute designed to protect the safety of the public, such as 68–612, *see Sprout, supra,* 277 U.S. at 171, 48 S.Ct. at 504, should not be pre-empted unless Congress clearly intended to strike down the state statute, the state law conflicts with an act of Congress or the state law plainly infringes the policy underlying a congressional act. *Southern Pacific, supra,* 325 U.S. at 766, 65 S.Ct. at 1518. There is no indication that Congress intended to strike down section 68–612 by enacting section 10927. *Kimberly* was decided in 1980, and if Congress wished to alter the result created by that decision, it could have done so in its 1982 revision of the Interstate Commerce Act, 49 U.S.C. § 10101–11917 (1982). *Cf. Cannon v. University of Chicago,* 441 U.S. 677, 696–99, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1978) (Congress is presumed to be familiar with legal precedent). Further, a conflict between state and federal statutes must be "direct and positive" to compel pre-emption. *See Reid v. Colorado,* 187 U.S. 137, 148, 23 S.Ct. 92, 96, 47 L.Ed. 108 (1902). Conflicts which only procedurally affect the remedy for enforcing a federally-created liability are not "direct and positive." *See Missouri, Kansas & Texas Ry. v. Harris,* 234 U.S. 412, 420–21, 34 S.Ct. 790, 793–94, 58 L.Ed. 1377 (1913) (state statute allowing the award of attorney fees only "incidentally affect[ed] the remedy for enforcing" a liability created by federal law and hence was not preempted). Finally, section 68–612 cannot infringe the policy underlying section 10927, because they share a common policy: to protect the claims of persons injured by motor carriers engaged in interstate commerce. *See Kimberly, supra,* at 95; *Pennsylvania Greyhound Lines, Inc. v. Board of Public Utility Commissioners,* 107 F.Supp. 521, 528 (D.N.J. 1952).

 The third reason supporting the soundness of conclusion reached in *Sprout, Kimberly* and *Boyles* is that the problem of forum shopping by plaintiffs, *see Rogers, supra,* does not arise when an action against an interstate motor carrier is brought by a Georgia resident for injuries suffered in Georgia. Under these circumstances only Georgia law will govern the joinder issue. For these reasons, the application of section 68–612 to the present action is proper.

ACCORDINGLY, defendants' motion for dismissal is DENIED.

IT IS SO ORDERED.