[No. 12141-1-III.   Division Three.   June 1, 1993.]

PATRICIA A. MILLER, *Appellant,* v. AETNA LIFE & CASUALTY COMPANY, *Respondent.*

*Michael T. Koslowski,* for appellant.

*Floyd E. Ivey* and *Westland, Liebler, Ivey, Larsen, Quigley & Hugill,* for respondent.

THOMPSON, J. — Patricia A. Miller appeals summary judgment orders dismissing her lawsuit against Aetna Life & Casualty Company. She contends Aetna should be compelled to arbitrate damages under her underinsured motorist coverage. We remand for further proceedings.

There are no disputed facts. On or about March 5, 1988, Ms. Miller's spouse, Lloyd Miller, was struck and killed by a motor vehicle owned and operated by Distribution Trucking. At the time of the accident, Millers were insured under a personal automobile policy written by Aetna. Their policy provided underinsured motorist coverage. Excluded from the definition of "underinsured motor vehicle" was any vehicle

> owned or operated by a self-insurer under any applicable motor vehicle law to the extent that damages are payable under a certificate of self-insurance.

Aetna did not produce a certificate of self-insurance issued to Distribution Trucking. It did produce a letter from the Washington Utilities and Transportation Commission (WUTC) dated April 25, 1991, stating that the WUTC recognized Distribution Trucking as a self-insurer. The recognition was based on a decision by the Interstate Commerce Commission (ICC) authorizing the trucking company to self-insure bodily injury, property damage, and cargo liability.

The trial court determined that, based on the WUTC letter and ICC decision, Distribution Trucking qualified as a self-insurer under Millers' policy. Accordingly, Aetna's motion for summary judgment was granted and Ms. Miller's motion for summary judgment was denied.

The sole issue on appeal is whether Aetna established, as a matter of law, that Distribution Trucking was self-insured within the terms of the policy issued to Millers.

Ms. Miller contends the Aetna policy requires a document entitled "certificate of self-insurance" and such certificate can only be issued by the Washington Department of Licensing pursuant to RCW 46.29.630.[1] According to Ms. Miller,

---

[1]RCW 46.29.630 states:

"**Self-insurers.** (1) Any person in whose name more than twenty-five vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate

the ICC decision and WUTC letter are insufficient proof of self-insurance under the Aetna policy. Aetna contends federal and state law applicable to common carriers does not provide for issuance of certificates of self-insurance and the WUTC letter and ICC decision satisfy the policy requirements.

██ In reviewing summary judgment orders, the appellate court engages in the same inquiry as the trial court. Since there are no disputed issues of fact presented in this appeal, the sole question is whether either party was entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### APPLICABLE MOTOR VEHICLE LAW

a. Federal Law. Distribution Trucking maintains a fleet of trucks which transport goods in interstate commerce. Common motor carriers transporting general commodities in interstate commerce are subject to subchapter II, chapter 105, subtitle IV of Title 49 of the United States Code and the jurisdiction of the ICC. 49 U.S.C. § 10521(a). The ICC will issue a certificate authorizing a carrier to provide transportation only if the carrier files approved surety bonds, certificates of insurance, proof of qualifications as a self-insurer, or other type of security, conditioned to pay any final judgment recovered against such motor carrier for bodily injury or death resulting from the carrier's negligence. 49 U.S.C. § 10927(a)(1); 49 C.F.R. § 1043.1(a).

---

of self-insurance issued by the department as provided in subsection (2) of this section.

"(2) The department may, in its discretion, upon the application of such a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person. Such certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury, or both.

"(3) Upon not less than five days' notice and a hearing pursuant to such notice, the department may upon reasonable grounds cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after such judgment shall have become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance."

The ICC will consider and approve, subject to appropriate and reasonable conditions, applications of a motor carrier to qualify as a self-insurer. The carrier is required to furnish financial statements and other evidence of its ability to satisfy obligations for bodily injury, liability, property damage liability, and cargo liability. 49 C.F.R. § 1043.5(a). Acting on a carrier's application, the ICC determines, among other things, whether the carrier has a sound self-insurance program. The program may include, but is not limited to, one or more of the following: irrevocable letters of credit, irrevocable funds, reserves, excess insurance coverage or other similar arrangements. 49 C.F.R. § 1043.5(a)(2).

In 1987, Distribution Trucking filed an application with the ICC for authority to become self-insured. In a decision rendered November 6, 1987, Distribution Trucking was authorized to self-insure bodily injury, property damage and cargo liability, *subject to certain conditions*. One of the conditions required the company to maintain a $1 million letter of credit or trust fund for bodily injury and property damage liability, the terms of which required ICC approval. Another condition required Distribution Trucking to continue to meet established net worth requirements.

There is no evidence in the record to indicate whether the conditions imposed by the ICC were satisfied at the time the accident occurred. Nor is there evidence which would indicate whether the ICC, as a matter of procedure, ever issued a "certificate of insurance" or other document which evidenced the carrier's status as a self-insured motor carrier.

b. Washington Common Carrier Law. Common carriers operating in Washington are required to secure appropriate authority to operate from the ICC, and register it with the WUTC.[2] RCW 81.80.371; WAC 480-12-126. The WUTC then issues a permit to the carrier. In granting permits, the WUTC requires evidence of liability and property damage insurance or the filing of security for such limits and upon such terms

---

[2]This requirement is not an unreasonable burden on interstate commerce. 49 U.S.C. § 11506(b).

and conditions as it deems necessary for public protection. RCW 81.80.190; WAC 480-12-350. All liability and property damage insurance policies must carry a " 'uniform motor carrier bodily injury and property damage liability endorsement' ". WAC 480-12-360. Evidence of insurance must be submitted to the WUTC either on a " 'uniform motor carrier bodily injury and property damage liability certificate of insurance,' (Form E) . . ." or "a written binder issued by an insurance agent . . .". WAC 480-12-350. There is no provision in Washington regulations or statutes for self-insurance in lieu of an insurance policy issued by an insurance company authorized to issue insurance in this state.

c. Washington Department of Licensing. RCW 46.01.040 vests the Department of Licensing with all powers, functions, and duties with respect to motor vehicle financial responsibility. The Financial Responsibility Act, RCW 46.29, does not expressly exempt interstate motor carriers from its provisions, nor are its provisions preempted by federal motor carrier insurance requirements. *Cf. Watkins v. H.O. Croley Granary*, 555 F. Supp. 458, 460-61 (N.D. Ga. 1982). However, the Financial Responsibility Act requires a person to prove financial responsibility only *after* an accident resulting in bodily injury, death, or property damage exceeding a threshold amount established by the Director occurs. RCW 46.29-.060.[3] *See also Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 206, 643 P.2d 441 (1982).

---

[3]Once an accident occurs in Washington, two steps come into play. First, if the injured or damaged person submits certain information within 180 days of the accident, the other party must demonstrate financial responsibility. RCW 46.29.070(2). Self-insurers are excluded from the security requirements. RCW 46.29.080(5). Second, the party causing the injury must demonstrate financial responsibility for the future by filing

(1) A certificate of insurance as provided in RCW 46.29.460 or 46.29.470;

(2) A bond as provided in RCW 46.29.520;

(3) A certificate of deposit of money or securities as provided in RCW 46.29.550; or

(4) A certificate of self-insurance, as provided in *RCW 46.29.630*, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that

At the time of the accident at issue, there was no general mandatory motor vehicle insurance requirement in effect in the state of Washington. Although all motor vehicles subject to registration in Washington must now have liability insurance, or meet the self-insurance requirements of RCW 46.29-.630, motor vehicles registered with WUTC as common carriers are exempt. RCW 46.30.020(3)(a); RCW 46.30.020(1)(a).

AETNA POLICY

The Aetna insurance policy provides in relevant part:

**"Underinsured motor vehicle"** means a land motor vehicle . . ..
1. To which no bodily injury or **property damage** liability bond or policy applies *at the time of the accident.*
2. To which one or more bodily injury or **property damage** liability bonds or policies apply *at the time of the accident,* but the sum of the limits of liability is less than the damages which the **covered person** is legally entitled to recover.
3. To which a bodily injury or **property damage** liability bond or policy applies *at the time of the accident,* but the bonding or insuring company:
   a. denies coverage; or
   b. is or becomes insolvent.

(Italics ours.)[4] As previously stated, any vehicle owned or operated by a self-insurer under applicable motor vehicle law was excluded from the definition.

■■ At the time of the accident, Distribution Trucking may have been self-insured as permitted under federal law. Since federal law controlled the financial responsibility

---

an insurer would have been obliged to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer.
(Italics ours.) RCW 46.29.450. *See also* RCW 46.29.260.

[4]An underinsured motor vehicle is defined in RCW 48.22.030 to also include the status of the vehicle owner *after* the accident:

(1) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies *at the time of an accident, or* with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person *after an accident* is less than the applicable damages which the covered person is legally entitled to recover.
(Italics ours.) Ms. Miller does not cite RCW 48.22.030 and does not contend that Distribution Trucking became underinsured after the accident.

requirements of Distribution Trucking at the time of the accident and RCW 46.29.450(4) applies only after an accident occurs, there is no merit to Ms. Miller's contention that only the Department of Licensing could issue Distribution Trucking a certificate of insurance.

Unfortunately, Aetna has failed to show all conditions imposed by the ICC for self-insurance were in place when the accident occurred. Therefore, on the present record Aetna was not entitled to summary judgment. We remand for further proceedings to determine whether in fact Distribution Trucking was self-insured under the terms of the Aetna policy, and for arbitration if it was not.

In holding that an ICC and WUTC determination of self-insurance can satisfy the Aetna policy provision, we are not modifying the policy as Ms. Miller contends. Nor is our decision contrary to *Public Employees Mut. Ins. Co. v. Mucklestone*, 111 Wn.2d 442, 758 P.2d 987 (1988), cited by Ms. Miller.

In *Public Employees Mut. Ins. Co.*, the insurer sought a declaration that its underinsured motorist coverage did not apply to vehicles owned by the state and federal government. *Public Employees Mut. Ins. Co.* was decided against the insurer because neither the state nor federal government could qualify as a self-insurer. Consequently, it did not qualify for the self-insurance exclusion in the policy which applied to those who were self-insured " 'within the meaning of any motor vehicle financial responsibility law . . . to the extent that damages are payable under a certificate of self-insurance' ". *Public Employees Mut. Ins. Co.*, at 444. The essential element missing in *Public Employees Mut. Ins. Co.* and present here is the ability of the owner of the motor vehicle to be self-insured under applicable motor vehicle law.

■ Our decision is consistent with Washington law governing uninsured motorist coverage. The purpose of uninsured motorist (UIM) coverage is to protect policyholders from injuries by persons who are either uninsured or underinsured. *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 560, 817 P.2d 841 (1991). UIM coverage allows an injured party

to recover those damages which he or she would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985), quoted and cited with approval in *Johnson*, at 566. *Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 818 P.2d 608 (1991). *See also Britton*, at 531. UIM insurance supplements but does not supplant liability insurance. *Allstate*, at 283; *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 120, 795 P.2d 126 (1990) (Callow, C.J., concurring); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88, 794 P.2d 1259 (1990).

We reverse the order of summary judgment and remand for further proceedings.

SHIELDS, C.J., and SWEENEY, J., concur.